

<div style="text-align: right">March 5, 2024</div>

Hon. Valerie Figueredo, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

    **Re:**     <u>Rodriguez et al v. City of New York, et. al.</u>, 21-cv-10815 (PKC)

Dear Judge Figueredo:

    As the Court may recall, I am co-counsel for Plaintiff in the case above. This is the "initial letter"[1] on a variety of discovery issues Plaintiff has raised, as noted in ECF No. 82.

    In addition to the process outlined in ECF No. 79, the parties met for approximately an hour on February 28, 2024,[2] and traded email summaries (**Exhibit 1**) confirming we largely have the same view of what remains in dispute.

    As set out below, the Court should compel responses from Defendants. And for many issues, Defendants' position is not justified — let alone "substantially justified" — such that costs and fees under Rule 37 are mandatory. Because of the number of issues, relevant background is discussed with the merits of each issue below.

<div style="text-align: center">**DISCUSSION**</div>

    **I. Vagueness Objections.**

    Defendants have, after two meet and confers, a conference, and several rounds of written correspondence, maintained a number of vagueness objections. Put bluntly, some of these cross the line into frivolous. The unfortunate reality here is that, as a practical matter, Defendants' approach to these objections leaves Plaintiff with very little confidence Defendants are undertaking searches in good faith or otherwise productive ways — rather, it appears the goal is obstruction for obstruction's sake.

---

[1] Because this is a letter called for specifically by a Court order, and the Court asked us to address all issues in a single letter, I have assumed the Court's ordinary three page limit for a Local Rule 37.2 motion does not apply, since this is not a Local Rule 37.2 motion. With that said, to the extent the Court intended otherwise, Plaintiff respectfully requests leave to file this overlength letter, given that there are more than a dozen issues, and addressing those issues in three pages would be impossible. I have done what I can to keep the letter as direct and to the point as possible, given the breadth of the disputes and the amount of history necessary for the Consolidated Cases issue.

[2] For Plaintiff, I attended with two law students; for Defendants, Mr. Scutero attended.



Below are two categories of issues. First, the currently remaining vagueness objections where Defendants have refused to withdraw the objection.[3] Second, there are requests where Defendants have withdrawn their objection, but that withdrawal has rendered the substantive response incoherent or non-responsive — but Defendants have made clear they stand on those improper substantive responses.

### A. **Interrogatory No. 8.**

*Identify each person who determined, or participated in the determination, that each Plaintiff should be arrested.*

Defendants initially objected to this Interrogatory claiming it was "vague and ambiguous as to what is meant by the terms 'determined, or participated in the determination' … and 'should be arrested.'" ECF No. 79-2 at 58. After meeting and conferring, Defendants seemingly withdrew these objections, saying, "Defendants are not withholding information relating to plaintiff's arrest," but then substantively saying, "Chief Lehr gave an order at the Mott Haven protest for officers to make arrests of individuals in violation of the curfew." Ex. 1 at 3.

That response is non-responsive. True, Chief Lehr gave the arrest order for the mass arrests of most protesters at Mott Haven, after the NYPD blocked them in — in a maneuver called an "encirclement" or a "kettle" — before the curfew went into effect, and held them there until after the curfew, never giving any opportunity to leave or comply with orders to disperse. *Id.*; *see also*, ECF No. 71 ("FAC") ¶¶ 102-109. But Plaintiff was *not* inside the kettle. Rather, she was "outside (to the east of) of the Mott Haven Kettle and within a few feet to the east of the" wall of the kettle made up of officers along Brook Avenue. FAC ¶ 133. She was then brutalized by (among others) officers with their badge numbers covered. FAC ¶¶ 134-144.

So, put simply, Defendants' response is inadequate because Ms. Rodriguez was not in the group Chief Lehr ordered arrested. Chief Lehr ordered the arrest of those inside the kettle. He may well have *also* and *separately* ordered Plaintiff arrested, but Defendants' response indicates that they have not looked at all into the specific facts of this case. Plaintiff was one of the organizers of the protest, and was specifically ordered arrested.[4]

Since no objection remains — that is, Defendants now specifically say they "are not withholding information" (Ex. 1 at 3) — the Court should order a response that addresses the question.

### B. **Interrogatory No. 10.**

*If any Plaintiff's arrest was a so-called "Turn-Over Arrest" within the meaning of the NYPD Patrol Guide, identify each NYPD member who played each of the roles described in the relevant Patrol Guide*

---

[3] A handful of Defendants' March 1 responses warrant further conferring, so Plaintiff will do so and raise any issue that cannot be resolved thereafter.

[4] For what it is worth, Plaintiff believes it was Defendant Monahan that gave the relevant order, in conjunction with ordering the arrest of the other organizer. *See, e.g.,* FAC ¶ 110.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



*provision, including, but not limited to, observing officer(s); assigning or other supervising officer(s); and assigned officer(s) with respect to each such arrest.*

Defendants initially claimed not to understand the phrase "so-called 'Turn-Over Arrest' within the meaning of the NYPD Patrol Guide." After Defendants insisted Plaintiff clarify in writing "that *'Turn-Over Arrest' within the meaning of the NYPD Patrol Guide* means a 'Turnover Arrest' as such an arrest is defined in Patrol Guide Section 208-20, titled 'Turnover' Arrests,' and the *roles described in the relevant Patrol Guide provision* are those described in that same section" (ECF No. 79-4 at 2 (formatting cleaned up for internal quotations)), Defendants "withdrew" their objections, but said they "have no change to their response." Ex. 1 at 3.

That response is incomplete. Defendants' substantive response ***does not identify anyone***. ECF No. 79-2 at 59-60. The Court should order Defendants to actually respond to the interrogatory, now that their claim not to understand it is resolved.

    C. **Interrogatory No. 12.[5]**

*Identify each person who used physical force in any manner on each Plaintiff on June 4, 2020 prior to or in connection with each Plaintiff's arrest.*

Defendants claim they cannot understand what "used physical force in any manner" means. And indeed, Defendants have tripled down now, saying:

> "After plaintiff pointed defendants to Patrol Guide Section 221-01 [and NYPD's 'Use of Force Reporting Guide" (*see* ECF No. 79-4 at 3)] in the Feb. 16th email, defendants consulted the section and could not find a definition for the terms physical force.[6] Defendants found the terms excessive force and chokehold within that Patrol Guide section. Defendants are unaware of any person who used excessive force or a chokehold on plaintiff, as those terms are defined in Patrol Guide Section 221-01. Subject to and without waiving any objections, Detective Nin and Detective Dorch applied flex-cuffs on plaintiff."

Ex. 1 at 3-4. That is, the City is seriously claiming it does not have an understanding "for the term[']physical force[,']" absent a written definition. *Id.*

On its face, that claim is stunning bad faith. After all, Defendants' own Answer is able to assert — without any definitional confusion — "[t]o the extent ***any force*** was used by the individual defendants, such force was reasonable, necessary, and justified." ECF No. 72 at 59 (emphasis added).[7] And the City annually publishes a "Use of Force Report," and the most recent version

---

[5] For clarity in reviewing the various communications, both parties have accidentally misnumbered this interrogatory in places.

[6] Defendants apparently did not consult the Use of Force Reporting Guide.

[7] If Defendants insist the term force is too vague, then this pleading is inadequate, and the Court should strike it under *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) (affirmative defenses must plead facts that add up to a plausible defense).



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



begins by stating it "seeks to provide a detailed accounting of all aspects of force, from the lowest level of *physical force* up to and including the intentional discharge of a firearm in adversarial conflicts."[8]  Again, no confusion, despite using the supposedly confusing "term 'physical force.'"  Ex. 1 at 3-4.  The claim not to understand the meaning of "physical force" is nonsensical.  The City of New York knows what physical force is.

Next, the substantive response is non-responsive.  The force used on Plaintiff was far beyond simple application of handcuffs.  She was grabbed by the hair and neck, punched, struck with a baton, and brutalized.  Presumably, Defendants are not saying they don't understand that as force.  So the response simply does not address the request in the context of this case.  It may be Defendants cannot identify the officers who used force (although the good faith of Defendants' affirmative defense about the use of force would be questionable in that case), but if that's the case, they can say so.

The Court should overrule this objection, and direct a substantive answer.

### D. **Interrogatory No. 18.**

*For each NYPD member who consulted with a NYPD Legal Bureau attorney in connection with any Plaintiff's arrest processing, identify each such NYPD Legal Bureau attorney.*

Defendants have agreed that they no longer have vagueness objections.  Ex. 1 at 4.  Defendants do not have any other objection that seems to provide a basis for refusing to answer.  Yet, Defendants say they "have nothing to add to their response" (*id.*), which was "Defendants state that based on the objections provided above, they will not be providing any further response to this Request."  That is, the only remaining objections are pure boilerplate:  "Defendants also object to this interrogatory to the extent it is unduly burdensome, not relevant, and not proportional to the needs of the case, as the time and expense of identifying 'each such NYPD Legal Bureau' vastly outweighs any potential benefit to Plaintiff in this action."  *Accord, e.g., Fischer,* 2017 US Dist LEXIS 28102, at *8 (a similar objection "is meaningless boilerplate. Why is it burdensome? How is it overly broad? This language tells the Court nothing").

The Court should compel an answer, since no non-boilerplate objection remains.

### E. **Document Request No. 3.**

*Produce all Roll Calls for each NYPD Precinct out of which each Individual Defendant turned out on June 4, 2020.*

Defendants claim they do not understand the term "turned out" in this context.  In the meet and confer, counsel admitted he'd never spoken to anyone at NYPD about this.  Now, Defendants say "Defendants have consulted with their client and maintain their objection. The terms 'turned out' are not official terms of the NYPD."  Ex. 1 at 5.

---

[8] https://www.nyc.gov/assets/nypd/downloads/pdf/use-of-force/use-of-force-2022.pdf

COHEN&GREEN                                                                                                       Page 4 of 20

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Whether the phrase is an "official term," it's certainly in common use, and Defendants' play-acting not to understand it is frivolous.  Members of the NYPD — including Commissioner Shea and Defendant Monahan talking about the 2020 protests during the Corporation Counsel's investigation, and many officers in the past — use it routinely:[9]

> Comm. Shea:
> "Sa-- same answer. There is a variety of ways that intelligence is disseminated. And that would include at muster points **where people are turned out for their assignments** for the day, in situations such as protests. So I think it can travel to them in all of those ways." Ex. 2 (emphasis added).

> Chief Monahan:[10]
> "We told everyone -- so, again, we went to the field forces 'cause at that point we had the field forces out and **the field forces turned out of** [redacted.]  So we had all of the cops called into one location and we were able to instruct them **before they turned out**, let them 20 know that this is the rules tonight, that there was a curfew in effect 21 at 11 o'clock.
> […]
> Yes. Well, not -- it wasn't a meeting, it was a roll call. So (unclear) **where they turned out** -- **it was a turn-out location** for all the Field Forces was [redacted.] Staggered times for each team, for each, you know, group and there would be a roll call and there'd be roll call instructions given whatever was going on."  Ex. 3 (emphasis added).

> D.I. Raganella:
> "Prior to the officers being **turned out** by the counter-terrorism bureau, we were allotted time upfront to do training with patrol services bureau."  Ex. 4 (emphasis added).

I can also represent that I have been at countless depositions over the years where officers use the phrase.

To start, the phrase has a clear meaning in context.  But even if it didn't, the claim that members of the NYPD do not understand it crosses the line into frivolous.  Clearly, Defendants — including Defendant Monahan — are able to use it fluently.  If counsel sincerely does not understand the term, he can speak to his clients to figure it out.  And if it is the clients that are play-acting at not understanding, counsel should say so, so that appropriate sanctions can issue.

---

[9] These specific examples are just what I happened to have ready to hand, from a local search of transcripts on my laptop.  Attached as **Exhibits 2, 3, and 4** are excerpts from those three transcripts.  And again, this is just what *happened* to be saved locally on my laptop.

[10] It bears mentioning that Chief Monahan is a party here.  That is, despite his clear, fluent use of the phrase **he himself** is claiming the term is unclear.  It is hard to see this as anything other than studied obstruction.





Since the objection is unfounded, the Court should overrule it.

    F. **Document Request No. 38.**

*Produce each Individual Defendant's current NYPD IAB resume and all related NYPD documents, including communications and documents reflecting the ultimate disposition of each IAB complaint or investigation, whether created within the NYPD's IAB or otherwise.*

Defendants initially objected on vagueness grounds. Once that was resolved, instead of substantively responding in compliance with the Rules, Defendants instead stated:

> "[D]efendants request plaintiff select the specific events within the defendants['] disciplinary histories that relate to excessive force or false arrest that she is interested in and defendants will consider producing the closing reports for those investigations. Defendants do not agree to produce documents relating to any open disciplinary proceedings, including investigations."

Ex. 1 at 6. There is no basis for either Defendants' request or limitation. As discussed more in depth in Point VI below, Plaintiff is entitled to documents related to past disciplinary investigations about relevant kinds of misconduct because "[t]here is no question that civilian complaints, whether or not deemed substantiated, may be significant in an assessment of an officer's qualifications and performance, particularly if the complaints reflect a pattern" — and even "apart from a pattern of complaints about an officer's conduct from various citizens over an extended period of time, even an isolated complaint may -- if the underlying conduct relates to the type of misconduct alleged in the complaint -- lead to the discovery of admissible evidence." *Bradley v. City of New York*, 2005 U.S. Dist. LEXIS 22419, *3 (SDNY Oct. 3, 2005).

Likewise, as explained in Point VI, just as there is no basis to withhold unsubstantiated investigations, there is no basis to withhold open investigations either (at least, absent a showing that doing so could somehow interfere with the investigation, which Defendants have not attempted).

The Court should overrule these objections and order documents produced.

  **II. 2015 Amendments.**

    A. **The current state of disputes.**

As set out in the motion at ECF No. 79, Defendants began this process by stating we were at an impasse in getting them to withdraw their position (verbatim) that "We are not required to state whether we are withholding documents." ECF No. 79 at 2; ECF No. 79-3 at 1.

Defendants have revised their position, but it remains indefensible. Now, Defendants say,

Page 6 of 20

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



"Defendants are not withholding documents relating to plaintiff Rodriguez's arrest.[11] Defendants, however, maintain their objections to plaintiff's request for defendants to state whether they are withholding documents relating to the Mott Haven protest and plaintiff's Monell claims." **Exhibit 1** at 2.

It is not clear from this statement (1) whether Defendants are — as caselaw says they must — agreeing to "revise their Responses to comply with the Rules" or not (*see, e.g., Fischer v Forrest*, 2017 US Dist LEXIS 28102, at *9 (SDNY Feb. 28, 2017)) or (2) what exactly falls into each of the two buckets. Plaintiff summarized her understanding of the position as follows:

> "For documents concerning Plaintiff's arrest and the Individual Defendants, [Defendants] will amend their responses to state, in sum and substances (subject to your exact wording): 'Defendants are not withholding any documents concerning Plaintiff's Arrest and/or the Individual Defendants.'"

Ex. 1 at 9.  In response to that, Defendants merely say, "As stated during the Feb. 28th meet and confer, defendants are not withholding documents relating to plaintiff Rodriguez's arrest."  Ex. 1 at 2.

So, on the first point, for the purpose of the below, Plaintiff assumes that Defendants do not intend to amend.  As set out below, The Court should order them to do so — particularly because Defendants' statement that they "are not withholding documents" is simply and clearly wrong.  And it does not comply with the 2015 amendments.  For example, Defendants have not produced the mass arrest processing photos that would depict Plaintiff with the officer who initially arrested her (rather than the officer she was turned over to for processing).  Likewise, as another easy example, Defendants have not produced a single email or text about Plaintiff's arrest, case, or Plaintiff individually — but those almost certainly exist, given Plaintiff's role as well as Defendants' positions at the mediation.[12]  That is not to even say Plaintiff is entitled to these documents (that's for another motion).  Rather, Defendants' claim they are simply not withholding anything at all (despite all their objections) is simply not made seriously.

On the second point, it is also not clear from this statement exactly what counts as a document purely "relating to the Mott Haven protest" as opposed to one "relating to plaintiff Rodriguez's arrest," particularly given Defendants omission of "concerning … the Individual Defendants." Given

---

[11] This is both untrue (defendants are clearly withholding *some* documents) and non-responsive (the issue is that Defendants responses do not comply with the 2015 amendments, and a blanket claim of non-withholding does not answer that problem).

[12] Plaintiff does not include those on the public docket, beyond noting it is clear the NYPD has a strong view about this case, and what the privilege claims for communications about that outside of those sent to counsel are not obvious.  But Defendants have not served any privilege log in this case, claiming they are not withholding anything beyond what was withheld for privilege in the consolidated cases (no communications about the NYPD's view of this case are reflected in those logs).  Thus, at a minimum, there are communications about this case specifically that are missing from the production, without even a statement they've been withheld.



Page 7 of 20

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



the seeming reasoning, and the fact that the Individual Defendants were not named or deposed in the Consolidated Cases,[13] Plaintiff is assuming documents relating to the Individual Defendants are included in what Defendants are agreeing to (partially) follow Rule 34 for.

B. **The 2015 Amendments require Defendants to amend their responses to state what they're withholding (and why) as to Plaintiff's arrest and the Individual Defendants.**

For documents relating to Plaintiff's arrest and the Individual Defendants, Defendants have provided no explanation for their apparent refusal to actually amend their responses. As set out throughout this letter, Defendants are obviously withholding at least some documents. And more to the point, the Rules do not permit a global statement of "we're not withholding anything." Rather, any "objection must state whether any responsive materials are being withheld on the basis of *that objection*." Fed. R. Civ. P. 34(b)(1)(C) (emphasis added). If Defendants claim they are not withholding documents, the rules require them to say as much in their responses.[14]

Since Defendants have (now, following a motion) admitted the Rules apply to requests seeking documents and information about Plaintiff's arrest and the Individual Defendants, the Court should order Defendants, as in *Fischer,* "to revise their Responses to comply with the Rules." 2017 US Dist LEXIS 28102, at *9.

C. **The 2015 Amendments require Defendants to amend their responses to state what they're withholding (and why) as to the Protest more generally and the *Monell* claims, particularly in light of the City's history of serious discovery misconduct in the Consolidated Cases.**

As a starting point, Defendants' position flies in the face of the rules. Defendants say, unambiguously, "Defendants … maintain their objections to plaintiff's request for defendants to state whether they are withholding documents." Ex. 1 at 2. But the request is not *Plaintiff's*, it's just what rules require, in mandatory terms: Any "objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(1)(C). *See also, e.g.,* 2015 Committee Note to Fed. R. Civ. P. 34 (while a party "does not need to provide a detailed … log," a party "does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection.").

---

[13] That is, Defendants do not seem to be claiming that Individual Defendants' disciplinary files, training and academy transcripts, other arrests that day, and so on, were produced (or at least, fully produced) for the Individual Defendants in the Consolidated Cases.

[14] Perhaps more precisely, the rules require Defendants not to interpose boilerplate, generic, copy-paste objections, as they've done here. *Fischer*, 2017 US Dist LEXIS 28102, at *8-9 (observing "stating that the requests are 'overly broad and unduly burdensome' is meaningless boilerplate," and concluding, "It is time for all counsel to learn the now-current Rules and update their 'form' files."). But at a minimum, if the City is going to interpose multiple paragraphs of "meaningless boilerplate" (*id.*), it needs to follow that with a statement that nothing is being withheld because of the boilerplate.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



So, why does the City think the rules do not apply to it? Because, they say, in a case that ultimately settled before the close of discovery, a large volume of discovery was exchanged. That case is *In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 (CM)(GWG) ("*In re Policing*").

Given that, as a practical matter, this issue should begin with an obvious question: "If Defendants' claim is that everything was produced or withheld in the Consolidated Cases, why can't Defendants simply import their statements of what they are withholding from the Consolidated Cases?"

The answer is — put directly — no reliable such statement exists because of the scale of discovery misconduct the City engaged in there. That is, despite nearly three years of litigation and a dozen sanctions orders, as Judge Gorenstein put it, "trying to get the City to just state what they're producing and what they're objecting to" (2022-02-12 Tr.[15] 117:19-23), Defendants' counsel — who was counsel in that case — does not trust the City's answers in the Consolidated Cases enough to simply repeat them. And with good reason, explained below.

> i.   *Brief summary of relevant proceedings in the Consolidated Cases and coordination here.*

Fully summarizing everything that happened in the 1000+ docket entry Consolidated Cases is likely a futile task. But some relevant background — especially about the City's discovery responses — is necessary here.

At the outset of the Consolidated Cases, "hoping that a sentinel case (most likely the *parens patriae* action brought by New York State Attorney General Leticia James) could be readied for trial with a year," Judge McMahon consolidated several cases and set them on a rocket docket. *In re: Policing*, ECF No. 538 at 2. "The idea was to prevent a lot of 'do over' discovery." *Id.* Relying on that sentinel case approach, like others, this case was "wheeled out to other judges of the court," with those judges — over the City's **vigorous** objection (*see, e.g.,* ECF No. 15 (asking the Court to reconsider)) — "[t]he assigned judges in those cases have agreed to coordinate discovery with the discovery that is being overseen by Judge Gorenstein." *Id. See also, e.g.,* ECF No. 14 (the Order setting out the parameters of coordination).

However, that plan did not quite work out. Though it represented it would produce nearly everything — that is, as here, the City's lawyer *said* there was "very little that they're asking for that we're not planning on producing," despite worrying formal responses (2021-06-24 Tr. at 14:14-23) — that was not to be.

To keep the rocket docket schedule, the City represented it would complete all production by July 31, 2021 — and the Court made that deadline an Order. But in its initial document response, rather than produce documents responsive to the requests, the City simply re-produced the documents it had produced to the Attorney General, the Office of the Inspector General, and so on, during the pre-suit investigations. That is, as set out in a September 10 letter from the Attorney General to the

---

[15] Transcript citations throughout this letter are to the *In re Policing* docket, unless otherwise noted.

COHEN&GREEN                                                                 Page 9 of 20

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



City, the metadata in Defendants' production revealed that "**more than 95% of the documents that Defendants have produced to date with bates numbers [were] either a reproduction of files already provided to government agencies in 2020, TARU videos, or the recently produced open and closed CCRB files**." *In re Policing,* ECF No. 277-4 at 4. Thus, for example, many documents requested specifically in the case were not produced at all, while document categories that *were* produced were only produced in version *as they existed* during the initial investigative phase. To sum it up, as the Court put it more simply later in the case, "part of the problem has been, contrary to what the City told me, they did not, in fact, produce all documents by July 31 of 2021." 2022-06-30 Tr. at 53:2-4.

The City *then* revealed it never had any plan to produce email discovery within the entire period Judge McMahon had set for "all discovery" (clarifying "'All discovery' means ALL discovery"), let alone by July 31, 2021 — and indeed, had just begun setting up a review team in September. *In re Policing,* ECF No. 40 ¶¶ 8-9. *See generally*, 2021-09-21 Tr. at 5-31. Around the same time, given the City's failure to respond to requests to meet and confers and comply with deadlines, the Court had to clarify "party must comply with deadlines for production or responses given during a Court conference unless a different deadline is stipulated in writing or obtained from the Court" and "the City must make itself reasonably available to confer on issues involving discovery and must respond promptly to requests to confer," and set out a special procedure for motions when the meet and confer process was falling apart. *In re Policing,* ECF No. 317 at 4.

To fast forward a bit, things came to something of a head in February 2022. At that point, there were several letter motions and Court Orders the City simply failed to respond to. Judge Gorenstein had to explain to the City:

> "[I]t's completely unacceptable to not comply with Court orders and to not comply with my individual practices. There are not so many letters coming in to me that that shouldn't be an obligation that you keep paramount in your mind, and if you can't comply with my orders and you can't comply with my individual practices, it really makes you question whether you're doing everything else you're supposed to do in terms of dealing directly with the plaintiffs when I'm not there to oversee it.
>
> So it's completely inexcusable and I'm surprised you don't understand that."

2022-02-12 Tr. at 7:17-8:5; *see also, id.* at 54:23-56:11 ("the notion that it's unfair to ask you to keep up with discovery issues is completely unacceptable … It's not acceptable for you to say that, and I'm now quoting you, 'It's unfair to defendants to ask us to keep up with the discovery demands here.' … And as I said, you know, if there's a problem, the solution is not to ignore Court orders and refuse to meet and confer … And part of the reason, from what I can tell from the letters, that we need so much meeting and conferring is that the City is not giving definitive positions on things.").

A constant problem, as Judge Gorenstein highlighted, was that that the City's objections were often characterized by an "utter lack of information" about what the objection was:

> "You know, I'm ready to decide disputes about what is burdensome and what is not



> burdensome but the City has to get to the point where it can articulate exactly what the burden is which almost never happens.
>
> Even when it comes to me there is just this sort of generic statement about this is burdensome without saying, you know, what's involved, without saying how many hours are involved, how much personnel is involved. At the bare minimum the City has to figure out, if it's going to be making these objections, what actually is the burdensomeness objection, I'm almost never getting that. So from the record presented to me, and the record from the City is extremely thin, I get very detailed letters from the plaintiffs describing at length, you know, refusals by the City to meet and confer, cutting off a session after an hour and a half that involves a lot of issues, the City never denies any of this, never responds, never explains. And if the only explanation is going to be, well, we can't keep up, that's just not an acceptable explanation."

*Id.* at 56:21-56:19; 68:24-69:7. Another problem was that Judge Gorenstein would "issue a Court order requiring" something, and the City's lawyers would "literally just act as if it doesn't exist." *Id.* at 91:2-3 (asking directly, "why is violating [my Orders] an option?"). So, as the Court concluded:

> I mean this, we can't function if you don't read and comply with Court orders, that's so basic. I mean I'm just flabbergasted that I don't know what you expect is going to happen if you don't comply with a Court order or try to do something about if you think you can't comply with it. I mean this one, obviously, could have been complied with. I just, I, I don't think I ever had a litigant quite so [contemptuous]."

*Id.* at 93:7-14.  Judge Gorenstein then issued sanctions.  And indeed, even once the City started offering explanations, many of them were "nonsensical" and "ma[d]e[] absolutely no sense."  2022-02-12 Tr. at 17:10-19.  He also, noting the long history of "trying to get the City to just state what they're producing and what they're objecting to," directed the City to complete a sort of remedial discovery worksheet, in the form of a "chart."  2022-02-11 Tr. at 117:19-23.

Despite the first rounds of sanctions, the pattern continued, with the Court sanctioning the City at least a dozen times (and reserving sanctions on many other issues that were outstanding when the case settled[16]).  And even those times when the Court elected not to issue sanctions or impose consequences for obvious misconduct, it often castigated the City's conduct, noting the constant "failure" to live up to "the most basic of responsibilities of attorneys" and noting how the City had "already been sanctioned for its repeated failure to comply with such basic responsibilities." *In re Policing,* ECF No. 598.  But because of the rocket docket schedule, the priority was making it through discovery.

Then there were the forged documents.  In trying to cover up what the City itself admitted were written "misrepresentations … to the Court and to opposing counsel" (ECF No. 526), the City's lead attorney — that is, the same attorney responsible for most of the production, the formal responses, and the initial drafts of the "chart" — attempted to forge a series of emails. *See generally*, *In*

---

[16] If the Court accepts the City's limitation that discovery on the Consolidated Cases is the sole document discovery permitted, it will likely also need to take up those unresolved sanctions issues.

   Page 11 of 20

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com

Case 1:21-cv-10815-PKC   Document 83   Filed 03/05/24   Page 12 of 20



*re Policing*, ECF Nos. 523-526.  Plaintiffs in *In re Policing* had to retain an expert, who concluded the City's lawyer forged documents.  Upon being told as much, the City initially attempted to have an *ex parte* conversation with the Court to discuss the issue, and then filed a public letter unceremoniously declaring that the extremely senior Corporation Counsel's "employment has been terminated" within hours.  That is, there was no exit process, there was no transition period, and — because of how the City elected to respond to the admitted forgery — **all institutional knowledge of what was in their production was thrown out**.[17]

Throughout the remaining discovery period, Judge Gorenstein continued the struggle of "trying to get the City to just state what they're producing and what they're objecting to (2022-02-11 Tr. at 117:19-23), as the City struggled to do the chart assignment, seemingly in part because it lacked the knowledge that walked out the door with the former lead attorney.  While the City had said in an initial version of the chart that its productions were completed, it later "apparently concede[d] that it is conducting further searches."  *In re Policing,* ECF No. 537.  And because of the "misrepresentations" the City made in that process, the Court sanctioned the City more times.  *Id.*

Similarly, the City misrepresented in the chart what it was producing, and because of that misrepresentation, the Court had to order an audit "to determine whether there are any misstatements or misrepresentations on the most recent Discovery Chart provided to plaintiffs in addition to the misstatement [the City] admitted to."  *In re Policing,* ECF No. 541.  The accuracy of the chart was called into question in other ways along the road too.  *See, e.g.,* 2022-03-04 Tr. at 47:3-4 ("I don't recall telling you that you could have secret objections [not listed in the chart]").

Further misrepresentations in the City's discovery responses and the chart floated to the surface as the case progressed into its third year.  For example, it came out that the City had silently withheld a number volume of IAB investigative files and complaints, and had silently produced incomplete files for many it had produced, all without alerting anyone (whether in its formal responses or in the chart).  *See generally*, 2023-04-19 Tr.; *see in particular*, *id.* at pp. 28-31.

To conclude, this is not an attempt to exhaustively provide the history of the Consolidated Cases.  Rather, this detail is included as important context for why neither Plaintiff nor Defendants are willing to rely on the formal (or chart) discovery responses as a statement of what the City is producing, what it's withholding, and why.  And thus, it is part of why the City must follow the rules in this case, and simply say what it is withholding.

> ii.     The Coordination Order (ECF No. 14) does not repeal Rule 34, and Rule 34 is clear.

Defendants' argument, essentially, is that they do not need to follow Rule 34 because discovery was coordinated with *In re Policing*.  But nothing in the Court's Order coordinating discovery supports that argument.  Instead, it simply prevents "do over" discovery — for example, by providing that

---

[17] *For how this played out, see, for example,* 2023-04-19 Tr. at 28-31 (the City's attorney, when pressed about what documents were collected and what searches were conducted, ultimately saying, "I was not here all the way back in September of 2021."  But of course, the attorney who was "there" in September had been fired.)



Page 12 of 20

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



"[n]o deposition of a witness or party conducted in *Summer 2020* shall be conducted in this action without leave of this Court." ECF No. 14 ¶ 7. Indeed, it explicitly contemplates that there may be some "rulings on the scope of discovery" where the specific facts of this case require a different result that "in *Summer 2020*," and carves out space for the Court to make such orders. ECF No. 14 ¶ 6.

The fact that the Coordination Order explicitly says "[n]o deposition of a witness or party" should be repeated without prior leave, but says nothing of document discovery besides that the Court may decide not to adopt every single order "on the scope of discovery" is strong evidence the Coordination Order had no intention to repeal the requirements of Rule 34 for this case.[18]

And Rule 34 itself is extremely clear, as Defendants seemingly acknowledge in revising their position on documents about Plaintiff's arrest. A party "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(1)(C). And beyond that, a party must — as Judge Gorenstein explained to the City with exasperation in the Consolidated Cases — what it's withholding and why.

> iii. *The Consolidated Case responses do not accurately or completely state what the City is withholding.*

While the situation might be somewhat different had discovery proceeded according to Judge McMahon's plan on the consolidated docket, the history of the City's (often admitted) discovery and attorney misconduct in the Consolidated Cases militates against allowing the City to lean on that case to resolve the issues here. As set out above, the City's discovery responses were rife with admitted misstatements, and the attorney who drafted the bulk of the responses and handled the actual production (1) admittedly forged documents to hide discovery misconduct and (2) was unceremoniously dismissed, without any exit process to capture her case knowledge. Put bluntly, the reason Mr. Scutero is likely unwilling to simply copy over the discovery responses from the Consolidated Case chart is that he knows it is not at all reliable.

The issue, then, is who should bear the burden of that lack of reliability? For the reasons above, if there is a burden, it should be the City's. The City engaged in the course of conduct that led to a place where one of the attorneys on the Consolidated Cases is here unwilling to stand by the actual substance of the City's discovery responses in those cases — and cannot even repeat those statements confidently, because he knows just how many "misstatements" were already discovered and admitted. The remedy here is not to ossify the admitted misconduct in the Consolidated Cases (and, as noted above, if that *is* the remedy, this Court will have to resolve the many sanctions decisions Judge Gorenstein expressly "reserve[d] the right to issue sanctions with respect to th[e broader City] course of conduct" to decide "another date" towards the end of discovery. 2022-02-12 Tr. at 54:11-22. Again, it should be striking that Defendants' counsel here is unwilling to rely on the actual responses served in the Consolidated Cases as a statement of what is being withheld.

To be clear, Plaintiff here is **not** seeking any "do over" discovery. *In re: Policing*, ECF No. 538

---

[18] It is also worth noting that, had the City had its way, **all** discovery in this case would need to re-do the discovery in *In re Policing*, since the City opposed coordination of any kind.



Page 13 of 20

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



at 2. Rather, she needs to pick up where discovery specific to the Mott Haven protest when the related class action (e.g., *Sierra*) settled out in March of 2023 and where more global *Monell* and policy discovery left off when the other cases settled. As the parties told the Court in a recent joint letter, we are not starting from square one — much discovery "[was] already conducted." ECF No. 76. But there is more left, and to make it through that discovery, we need to start — as the Rules provide — with a statement of what is being withheld, so that the parties can confer on whether there are substantive disputes.

### III. Defendants' Claims Plaintiff has Some Access to Documents.

Defendants make three related objections all basically saying Plaintiff has some access to documents: They say certain documents are "publicly available" (*see, e.g.,* ECF No. 79-2 at 43), they say certain documents were produced in the Consolidated Cases (*see, e.g.,* ECF No. 79-2 at 41-42), and they say certain requests are duplicative of others.

First, the good news: the parties seem to agree that a request cannot be duplicative if the responding party did not produce the records sought in response to the other request.[19] Ex. 1 at 9.

However, Defendants appear to be maintaining their objections in the specific, which leads to two issues.

**First,** on the publicly available point, some availability does not fully resolve a request. Rather, a party must either (1) produce or (2) identify and authenticate the documents responsive to requests, so there is no dispute about what documents are authentic. *Charter Practices Intl., LLC v Robb*, 2014 US Dist LEXIS 8166, at *6-7 (D Conn Jan. 23, 2014); *National Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009); *Fosselman v. Gibbs*, No. C 06-0375, 2008 U.S. Dist. LEXIS 82697, 2008 WL 745122, at *4 (N.D. Cal. Mar. 18, 2008) ("the objection that information is equally available to the questioner is not a proper objection"); *Foti ex rel. Louisiana v. Eli Lilly & Co.*, 2008 U.S. Dist. LEXIS 55780, 2008 WL 2858617, *3 (E.D.N.Y. 2008) ("Mississippi's 'equally available' objection deprives Lilly of basic information concerning the nature of that State's claims"); *Chinn v Elmwood Franklin Sch.*, 2018 US Dist LEXIS 188307, at *12 (WDNY Nov. 1, 2018). The Court should direct Defendants to pick one or the other of these options, where relevant.

**Second,** on duplication and the Consolidated Case requests, there is one basic issue outside of what is discussed above, and the resolution is that Defendants should have to identify the Bates numbers for documents they claim they've already produced when they are claiming a request is duplicative. The basic issue is that Defendants are simply not correct that the requests are duplicative. This is something Plaintiff pointed out extensively in the meet and confers. A quick example will

---

[19] While this may seem obvious, we had to clarify this because the City took the opposite position in the Consolidated Cases, and the responses here seemed to incorporate those objections. However, the parties agreed here, "We also discussed and agreed — which addresses another chunk of the issues — that a response cannot properly object to [Request 1] as 'duplicative' of a [Request 2], if the response to [Request 2] is to refuse to produce documents. Given that, the duplicativeness objections are not problematic in theory (but as above, as a practical matter, issues remain)."



illustrate:

- Plaintiff's Document Request No. 35 seeks "each Individual Defendant's NYPD Academy transcript."

- Defendants object that "it is duplicative of the Plaintiffs' Consolidated Request No. 16, served in *In re New York City Policing During Summer 2020*, 20-cv-8924, which already sought Academy transcripts and histories," and state "Defendants state that based on the objections provided above, they will not be providing any further response to this Request."  ECF No. 79-2 at 35-36.

And, indeed, Consolidated Request No. 16 *did* seek transcripts.  *See In re Policing* ECF No. 341-1 at 18.  But it did not seek transcripts *for these Individual Defendants*, because they were not named in the relevant requests — and the City never produced *those* transcripts.

So, the City's objection is neither here nor there:  Many of the requests here are not duplicative, because while they seek similar records, they seek them *here* for Plaintiff Rodriguez and for the Individual Defendants; while the Consolidated Cases sought them for the appropriate parties there.  If the City wants to claim it has already produced those documents, it should do so by identifying Bates numbers, but there is no reason to think it has produced the full set of documents sought — because much of the production in the Consolidated Cases was tied to a deposition protocol, and (most of) the Individual Defendants were not deposed.

**IV. Objections to Asking for "All Documents."**

Defendants' object to the requests that ask for "all" documents of some type or another:

"Defendants further object that this Request is overbroad in that it seeks 'all documents[.]'"

ECF No. 79-2 at 23 (unrelated clause omitted as indicated).  Defendants have partially withdrawn this objection, but say they "maintain this objection as to documents related to the Mott Haven protest or any other protest."

To start, the objection makes no sense, and cannot be meant seriously:  Defendants themselves begin nearly every single one of their own discovery requests with the same language.  *See* **Exhibit 5** (excerpt from Defendants' requests), Doc. Req. 1 ("Produce all documents…"); 2 (same); 3 (same); 4 (same); 5 (same); 6 (same); 7 (same); 8 (same); 9 (same); 10 ("If plaintiff claims… produce all documents [concerning the claim]"); and so on.  As noted below, this is obviously a standard request.  "Every single day in every single litigation" parties respond to "all documents" requests without an objection to producing "all documents."  2022-02-11 Tr. at 14-15.

Moreover, Defendants are barred by the Coordination Order from making this objection — and the ruling doing so is also well-reasoned.  That is, Defendants' "all documents" objection is an

Case 1:21-cv-10815-PKC   Document 83   Filed 03/05/24   Page 16 of 20



objection reiterated from the Consolidated Cases, where Judge Gorenstein rejected it in no uncertain terms:

> [After an objection to producing "all" of anything]
>
> THE COURT: Ms. Weiss, I have to say this line of argument makes no sense to me. From what I've gathered, what actually is typically happening is that City is producing some materials, the plaintiffs are noticing it's not all, you're conceding, as you just did now in your discourse that you then come up with it, and they're right, you did violate the order.
>
> […]
>
> *So no one is being set up when they're being told to produce all documents on a topic, that happens every single day in every single litigation.*
>
> Parties then do a reasonable search and they don't feel they're being set up. They produce the documents and usually there's not an issue, and when there is an issue then we solve it through the mechanisms. And, you know, maybe we'll talk later about whether those are working or not. But you're making me very concerned with these objections, the idea that you are incapable of producing, of doing a reasonable search to produce the documents, it makes no sense.

2022-02-11 Tr. at 14-15 (cleaned up, emphasis added) (awarding sanctions, among other things, for the City's failure to produce "all" documents it was ordered to).

The Coordination Order provides that "All rulings on the scope of discovery in *Summer 2020* shall apply with equal force to this action, except to the extent otherwise ordered by this Court." ECF No. 14 ¶ 6. Since Judge Gorenstein already overruled this (frivolous) objection, Defendants cannot reiterate it without first asking this Court to order "otherwise." And Defendants have provided no reason at all to do so, because they cannot.

**V.   HIPAA and 160.50 Objections.**

Defendants have made certain objections under HIPAA and 160.50, essentially asserting statutory bars to disclosure, objecting that requests:

> "seek medical documentation for non-parties who have privacy rights in their medical records and for whom no HIP[A]A release has been provided" (ECF No. 79-2 at 15); and

> "any documents [sought] are sealed by operation of law and/or pursuant to New York Criminal Procedure Law §§ 160.50, et seq. and an applicable 160.50 release has been provided to defendants" (ECF No. 79-2 at 23).

As drafted, these objections run into the 2015 amendment issues above — that is, they are non-specific and generic, and do not state whether Defendants are withholding anything. And

Page 16 of 20

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Defendants have nominally stated they are not withholding any documents for privilege to avoid serving a privilege log.[20]

However it is clear at least some records are being silently withheld. A major part of the City's justification for its brutality at the Mott Haven protest has been a claim that one or more officers had been seriously injured before enforcement. And the City would obviously have records of that injury.

Yet, without any privilege log, Defendants "defendants stand[ ]by their HIPAA based objections." Ex. 1 at 3. Those objections are frivolous, at least as served. Defendants offer no explanation at all as to how HIPAA applies here, and indeed, have refused to even try. *See e.g.,* Ex. 1 at 11 (summarizing the meet and confer, saying Defendants would revert on "whether they will explain how HIPAA applies here," which they did not).

By its own terms, HIPAA only applies in certain circumstances, and to certain entities: Specifically, it only will bind a health plan, health care clearinghouse, or healthcare provider. 45 CFR 160.103. As HHS itself explains, "If an entity does not meet the definition of a covered entity or business associate, it does not have to comply with the HIPAA Rules."[21] Since Defendants have refused to explain HIPAA restricts any disclosure — and there appears to be no non-frivolous claim the City was somehow acting as a covered entity in supervising the NYPD — HIPAA simply does not apply, and the Court should overrule this objection.

For 160.50, Plaintiff has already served a 160.50 release for her own records, and there are multiple (at least three) unsealing orders for this in the Consolidated Cases, which presumably cover any other records (since they apply with equal force to this case, *see* ECF No. 14 ¶ 6). While Defendants initially agreed to look at the unsealing orders in the Consolidated Cases, Defendants maintained their 160.50 objection with no explanation at all as to how any records are *not* unsealed already. Since the multiple unsealing orders obviously moot this objection, the Court should overrule it.

**VI. Objections to Producing Documents Where a Complaint was "Unsubstantiated."**

For Document Requests 44 and 45, Defendants have objected to producing anything that "concern[s] allegations of misconduct that are not substantiated [or] did not result in a finding of misconduct." ECF No. 79-2 at 42-43. Defendants refused to withdraw this apparent limitation on their searches and production. *See* Ex 1 at 10; at 2.

Courts uniformly reject this objection. Discoverability does not turn on whether a disciplinary proceeding is "substantiated and completed." *See, e.g.*, *Gibbs v. City of New York*, 243 F.R.D. 95, 96 (S.D.N.Y. 2007) ("[T]he fact that CCRB complaints are unsubstantiated does not make them irrelevant

---

[20] More specifically, they stated they are not asserting privilege beyond those asserted in the privilege logs in the Consolidated Cases. But none of those logs, as relevant for these objections, noted withholding of HIPAA or 160.50 documents.

[21] https://www.hhs.gov/hipaa/for-professionals/covered-entities/index.html

COHEN&GREEN                                                                                           Page 17 of 20

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



and undiscoverable[.]"). That is, Courts "emphatically reject defendants' contention that 'unsubstantiated' complaints should, by virtue of that status, not be ordered produced. There is no question that civilian complaints, whether or not deemed substantiated, may be significant in an assessment of an officer's qualifications and performance, particularly if the complaints reflect a pattern." *Bradley v City of NY*, 2005 US Dist LEXIS 22419, at *3 (SDNY Oct. 3, 2005). Indeed, the Second Circuit has noted (quoting a City witness) that "that the very fact that an unusual number of civilian complaints had been filed, without regard to how they were ultimately resolved, could create concern" about the officer's fitness in ways that are relevant to the case. *Vann v. City of New York*, 72 F.3d 1040, 1045 (2d Cir. 1995).

"Not surprisingly, then, the courts have repeatedly directed production of such complaints, whether substantiated or unsubstantiated or even withdrawn, as well as records of complaints reflected in the CPI and IAB investigative record." *Bradley*, 2005 US Dist LEXIS 22419, at *4 (SDNY Oct. 3, 2005),[22] *citing Vann*; *Mahan v. City of New York*, 2005 U.S. Dist. LEXIS 14322, 2005 WL 1677524, *4-5 (EDNY July 19, 2005); *Granato v. City of New York*, 1999 U.S. Dist. LEXIS 18550, 1999 WL 1129611, *1 n.4 & *9 (EDNY Oct. 18, 1999); *Morrissey v. City of New York*, 171 F.R.D. 85, 88-89 (SDNY 1997); *Malsh v. New York City Police Dep't*, 1995 U.S. Dist. LEXIS 4663, 1995 WL 217507, *2 & n.5 (SDNY April 11, 1995). The other cases reaching this result are legion.

The Court should overrule this objection.

### VII. Rule 37 Costs and Fees.

Finally, there are the mandatory costs and fees under Rule 37. As the Court can see simply from the size of this letter, Defendants have successfully imposed significant costs on Plaintiff in needing to litigate many of these discovery issues that, frankly, should be the baseline of federal practice.

### A. Fees are mandatory for Defendants' refusal to state whether they were withholding *any* documents.

First, the issue left over from ECF No. 79. Defendants have abandoned defending their initial position that "We are not required to state whether we are withholding documents," at least as to documents about Plaintiff's arrest and the Individual Defendants. ECF No. 79 at 2-3. But they did not do so before Plaintiff moved, did not do so at the meet and confer when Plaintiff made clear there was an impasse and she would move, and did not do so in the week after Plaintiff put in writing that, she "want[ed] to make clear we're prepared to move quickly on those items identified as an impasse

---

[22] Notably, in *Bradley*, the Court noted that the City was withholding these documents even after "the District Court in these consolidated cases has already spoken on this subject, and has specifically rejected defendants arguments with respect to CCRB and disciplinary records." 2005 US Dist LEXIS 22419, at *4. It commented, "[t]he failure of defendants' counsel to address that decision, as well as the other pertinent caselaw, is certainly troubling. It is particularly so in view of the fact that defendants in these cases have not hesitated to cite other decisions by the District Court in these consolidated cases as binding in subsequent discovery disputes." *Id*, at *4 n. 1.

 Page 18 of 20

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



above (and, indeed, plan to do so shortly…),"  and clearly and repeatedly asked Defendants to immediately say whether there was something more they wanted to say before a motion.[23]

Rule 37 is explicit:  Fees are still mandatory even if the "requested discovery is provided after the motion was filed."  Fed. R. Civ. P. 37(a)(5)(A).  The motion was filed, then Defendants realized just how indefensible their position was.  And as set out above, even now, Defendants are still refusing to actually fully comply with the Rules.  Fees are therefore mandatory for the reasons set out in ECF No. 79.

### B. **Defendants' other positions lack substantial justification and in some places cross the line into frivolous.**

As set out in more depth above, few of Defendants' positions have any justification.  As set out in ECF No. 79, "if a motion to compel is granted, 'or if the disclosure or requested discovery is provided after the motion was filed — the court ***must*** . . . award reasonable motion expenses incurred in making the motion,'" unless the opposition is "substantially justified." *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (*quoting* Fed. R. Civ. P. 37) (emphasis added in *Underdog*).  And the reason for this is deterrence:  Parties are meant to take reasonable positions, and litigating by pure scorched earth is something a party should bear the costs of.

Here, Defendants' positions are, in many places, stunning.  Defendants, including Defendant Monahan, claim they don't understand the phrase "turned out," even as the NYPD's Commissioner and Defendant Monahan use it fluently.  Defendants stunningly claim they don't understand the word "force," even as they plead an affirmative defense in the same terms.  Defendants are refusing to produce documents that are always ordered produced, like unsubstantiated disciplinary cases.  Defendants are refusing to produce "all documents" in some instances based on the use of the word "all," while they begin virtually every single one of their own requests with the same phrase.  Defendants refuse to even try to explain how HIPAA could possibly apply, yet they assert objections under it.

This is bad faith, undertaken for the purpose of pure obstruction — and to slow down getting to the real, meaningful disputes.  And bad faith is, of course, a world away from justified, which is in turn a world away from "substantially justified," which is the showing Defendants must make to avoid mandatory fees.  The Court should (or, per the rule, "must") award fees.

As ever, we thank the Court for its time and attention.

---

[23] ECF No. 79-4 at 1 ("Please let me know as soon as possible if we've misstated any impasses, your positions, or the like, so we can be accurate in any motions we need to make"); at 9 ("So, if you think we've misstated your position, or think we're not actually at an impasse on those items identified as impasses (specifically, 'Withholding/What Is Being Withheld' [as relevant here]), we would ask you to clarify that really as soon as possible.").



Page 19 of 20

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



                                    Respectfully submitted,

                                        /s/
                                 _____
                                 J. Remy Green[24]
                                    *Honorific / Pronouns: Mx. / they, their, them*
                                 **COHEN&GREEN P.L.L.C.**
                                 *Attorneys for Plaintiff*
                                 1639 Centre St., Suite 216
                                 Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

---

[24] Law students Jianing Zhao and Reed Herter provided substantial drafting assistance in preparing this letter and the related materials exchanged between counsel. With the Court's leave, we would like them to take the lead speaking on the specific issues they drafted (and I will supervise and be ready to jump in if there is any issue).

COHEN&GREEN           Page 20 of 20

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com