

June 28, 2024

Hon. Valerie Figueredo, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

  Re: <u>Rodriguez et al v. City of New York, et. al.</u>, 21-cv-10815 (PKC)

Dear Judge Figueredo:

  As the Court may recall, I am co-counsel for Plaintiff in the case above. I write under the Court's Rule II(c) and Local Rule 37.2 to ask the Court to hold a conference.[1] Defendants have asked for until July 26 to respond (and Plaintiff has no objection). Because of the extensive background and the importance of discussing Judge Gorenstein's prior orders on the issues here, I ask the Court to allow an extra page, and Plaintiff has no objection to the City responding similarly.

  Discovery in this case was initially coordinated (but not formally consolidated) with discovery in *In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 ("Consolidated Cases"). *See* ECF No. 14. At the most recent conference, the Court said that for places where the City failed to produce something it was required to in the Consolidated Cases, if "plaintiffs want to go through the documents, identify areas where they think there might be something missing, they can point that out specifically to the City," and go from there. 2024-03-20 Tr. at 49. That is what is now at issue in this motion. Specifically, the City never fully produced or searched for investigations of the Internal Affairs Bureau into — possibly including into Ms. Rodriguez's treatment specifically — the protest at issue here and the other protests during the summer of 2020. These are particularly important because the City affirmatively shut down the only after-action review[2] there was of policing during the protests — so the IAB files are perhaps the best evidence of ratification (or not) of the force officers were using at protests like the one here. *See also*, n. 4, below.

  There is no dispute the Court in the Consolidated Cases ordered these documents disclosed, and there is no dispute the City did not disclose these documents in that case. There is also no dispute the City wrongly, and silently, withheld these documents. Rather, the City is essentially saying it should get to reap the fruits of having successfully, secretly withheld these documents for three years in the Consolidated Cases. That should not work. The Court should follow Judge Gorenstein's lead and

---

[1] As required by the Court's Rules: (1) the parties conferred by phone on June 24, 2024, (2) for a little under an hour, (3) between me for Plaintiff and Mary O'Flynn for Defendants, (4) Defendants' position is that they will not produce any of the documents at issue (with a full description of that position in the body below), and (5) Plaintiff informed Defendants she would move and believed the parties were at an impasse.

[2] *See generally*, Consolidated Cases, ECF No. 854 at 5-6 (allowing the City to withhold the draft of that after-action review because, essentially, the drafting of the report "died on the vine").



make the City "just reproduce this," given that it wrongly withheld these documents to begin with. 2023-06-21 Consolidated Cases Tr. (Ex. 3, below) at 15-17. *Cf., e.g.,* 2024-03-20 Tr. at 30:8-15 (THE COURT: "if Judge Gorenstein ordered this already, then I would … follow his lead on this").

## DISCUSSION

**I. Background.**

A general overview of the events in the Consolidated Cases appears in ECF No. 83 at 9-12. In short, as relevant here, the City did not actually comply with Judges Gorenstein and McMahon's orders or discovery requests, instead simply reproducing documents from governmental investigations. That initial misstep placed everyone behind schedule in a way that lead to repeated failures to live up to even "the most basic of responsibilities of attorneys," and over a dozen "sanction[s] for [the City's lawyers'] repeated failure to comply with such basic responsibilities." Consolidated Cases, ECF No. 598. If that wasn't enough, the City's then-lead attorney forged documents to cover up discovery misconduct (she was summarily fired for that, when it became clear a motion would expose that fact). And in the wake of that and other misstatements, the Court ordered the City to audit its productions and conduct for other misstatements. Consolidated Cases, ECF No. 541.

At issue in this motion are IAB files for investigations into the protest at issue in this case, and others throughout the summer. In early 2023, the Consolidated Case plaintiffs — in part based on receiving documents that indicated an investigation into an officer who engaged in particularly grave misconduct had been completed before production, but documents were silently withheld until they were produced as part of an individual-officer-related pre-deposition protocol — discovered that the City's IAB production was woefully incomplete. It had partial files, many files did not go beyond the date documents had been produced to government investigators, others were inexplicably incomplete, and still other cases reported on were missing altogether. *See generally*, Consolidated Cases, ECF Nos. 924 and 814. While the plaintiffs initially asked why some files were incomplete, the then-lead counsel (the same who ultimately forged documents) falsely stated "that's all that exists." 2023-04-19 Consolidated Case Tr. at 48:10-25.

With significant briefing, Judge Gorenstein held a series of three hearings about this issue, on April 19, May 9, and June 21 of 2023 (**Exhibits 1, 2, and 3**). From the first of those hearings, he set out to do two things: Address immediate issues caused by missing documents related to then-ongoing depositions and then also address the bigger picture. *See, e.g.* Consolidated Cases, ECF No. 943. The mechanism for the latter was an "audit" of ten specific cases. That audit went forward and found misconduct.

Specifically, Judge Gorenstein found that a "systematic search [for IAB files] *was not done* at any point" during the Consolidated Cases — "and [that fact] is represented by the fact that, in the[] ten [sample audit] files, there were large gaps." 2023-06-21 Consolidated Cases Tr. at 15-17 (emphasis added). That is, *every single one* of the ten audit cases involved "large gaps" in what the City produced. Given that finding, Judge Gorenstein gave the City (with it being the City's burden) a last chance to substantiate its claim that producing the documents essentially required someone to "one by one, create PDFs and burn them onto disks" first through a meet and confer and then through a



motion, but directed that absent a motion making that showing, "the default is going to be you just reproduce this" (meaning all the missing IAB files). *Id.* at 31, 40-41.[3] Instead of substantiating any burden, that meet and confer revealed even more extensive misconduct: While portions of only 75 files were actually produced (2023-06-21 Consolidated Case Tr. at 34), there were several hundred tagged by IAB as being related to the 2020 protests, withheld silently, followed by multiple false statements from counsel that nothing was withheld. Then, within a week of that order and meet and confer, the Consolidated Cases settled, mooting the issue for the consolidated docket — but obviously not for this or any other *coordinated* case. Plaintiff has extensively followed up about this issue, before ultimately making this motion (**Exhibit 4**).

### II. The Court Should Order Production.

The Consolidated Cases eliminated a significant amount of the burden on the City that *Monell* discovery in this case would have otherwise imposed. But the Consolidated Cases settled without discovery being completed — so for the *Monell* claims that are substantively identical, discovery needs to be completed. And in the Consolidated Cases, Judge Gorenstein's ultimate decision on this issue was clear: At issue was "a production that [the City was] supposed to have done a year and a half ago" as of then. 2023-06-21 Consolidated Case Tr. at 17-18. And a "systematic search [for IAB files] was not done at any point." *Id.* at 15-17. So "the default is going to be [the City has to] just reproduce this." *Id.* He explained: "[t]he City is looking at a very big task coming down the road, and if they want to talk me out of it, I need more detailed information," like, for example, a showing production would require the City to "one by one, create PDFs and burn them onto disks." *Id.* at 40-41. But if there were ordinary, keyword search capabilities, "I'll order them to do it." *Id.*

The City's explanation for its refusal to agree to follow that ruling does not make that showing:

> As for all IAB files covering the summer of 2020 protests we believe that request is just not proportional to the needs of this case. While I appreciate discovery in this case (and others) was consolidated with the protest class actions I understood that to be a mechanism to deal with discovery happening in many different cases at the same time. We believe the voluminous and burdensome discovery obligations of the class actions ended with those significant settlements.

That position also ignores that this case has significant damages and live, well-pled *Monell* claims. The City is essentially attempting to force the terms of a class action settlement to bind a party outside the class, and deprive a party of core, relevant discovery. That is simply not how Rule 23 works: Since the class settlement does not bind any party here, this case is like any other *Monell* case. If the City wanted a class settlement that would address people, like Plaintiff, with very serious injuries, it might

---

[3] The Court also ordered a meet and confer because the City's burden claims were not plausible (for example, claiming IAB had no keyword search capabilities, despite a 30(b)(6) witness testifying the opposite). That meet and confer took place and confirmed — with a live demonstration — that the burden of production was not what the City's attorneys represented: IAB Databases are text searchable and mass exporting is available. *See contra*, 2023-04-19 Consolidated Cases Tr. (the City's attorney, incorrectly representing, "You can't just press protest-related cases or officer so-and-so for protest-related cases, and everything just comes up all in one shot.").



Page 1 of 2

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



have negotiated one.

Moreover, and more to the point, the City's position ignores the history of *how* the City failed to produce the discovery at issue, which is highly relevant. The City engaged in stunning discovery misconduct, including forgery. Had the City's attorneys simply made the "production that [they] were supposed to have done," Plaintiff here would have had these documents two and half years ago. 2023-06-21 Tr. at 16-17. And the City has no explanation for that misconduct: As Judge Gorenstein explained, "I've never heard an explanation, at least not one that I understand, as to why [the failure to produce IAB files] happened. And in the absence of one, it seems like there's a problem that has to be solved." *Id.* at 15-16. Instead, the City's attempts to explain, per Judge Gorenstein, only "confirmed what I thought, which is that the systematic search was not done at any point." *Id.*

Like Judge Gorenstein, the Court should not "have a lot of sympathy with the thought that, well, you're completely done now, and there's nothing you should do to try to cure this problem." *Id.* Analogous are cases where courts reject the City's "underlying assumption that an institution may shield itself from discovery 'by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expenditure.'" *Wesley v Muhammad*, 2008 US Dist LEXIS 74342, at *14-15 (SDNY Sep. 17, 2008). "To allow a defendant whose business generates massive records to frustrate discovery, by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules." *Id.* at *14-15 n. 5. And similarly, to allow a party to engage in severe discovery misconduct, and then claim undue burden in fixing it, would also defeat the purpose of the discovery rules and allow the City to deflect accountability on its failures.

Finally, because the City has been unable to identify the officers who *actually* arrested Plaintiff and used force (the force the City pleads "was reasonable, necessary, and justified" (ECF No. 72 at 59)), there is no underlying individual § 1983 claim for certain conduct, making the *Monell* claim central.

In sum, the City cannot avoid producing core documents about its response to the 2020 protests — including the protest specifically at issue in this case — by claiming its own prior discovery misconduct makes it burdensome to comply. Judge Gorenstein ordered these records produced because of their clear significance. And indeed, recent reporting has only highlighted that.[4] If the City wants to stipulate that it ratified all the conduct at the Mott Haven protest and others throughout the summer of 2020 — and that the officers were following unwritten policies and practices in how they assaulted Plaintiff — the situation would be different. But if it is not willing to, then it must produce these highly relevant documents.

---

[4] *See, e.g.,* Eric Umansky, *New Yorkers Were Choked, Beaten and Tased by NYPD Officers. The Commissioner Buried Their Cases*, ProPublica (Jun. 25, 2024) (discussing how the NYPD's Commissioner has recently overrode a CCRB recommendations of discipline for an unprecedented number of cases recently, and highlighting one about misconduct at a summer 2020 protest, where the now-"deputy chief of the unit that handles protests throughout the city" charged a protester, "gripped her hair and yanked her to the ground" (video available in article), as well as an array of other "cases involving officers accused of wantonly using chokeholds, deploying Tasers and beating protesters with batons.").

Page 1 of 2

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



As ever, we thank the Court for its time and attention.

                                                                Respectfully submitted,
                                                                      /s/
                                                                _____
                                                                J. Remy Green
                                                                      *Honorific / Pronouns: Mx. / they, their, them*
                                                               **COHEN&GREEN P.L.L.C.**
                                                                *Attorneys for Plaintiff*
                                                                1639 Centre St., Suite 216
                                                                Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

Page 1 of 2

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com